## JACKSON *v.* EMMONS.

TRESPASS; LIMITATIONS; PAROL LICENSE; EVIDENCE.

1. Where the statute of limitations is pleaded to an action to recover damages for injuries to plaintiff's wife and house caused by defendant's blasting rock near plaintiff's house under a permit from the municipal authorities, and the testimony shows that plaintiff's wife was injured on one day by a blast and the house on a later day by another blast, there can be no recovery for the injuries to plaintiff's wife if they occurred more than three years prior to the filing of the declaration, the action of the defendant not being in the nature of a continuing nuisance; and, therefore, testimony as to the extent of the injuries to the plaintiff's wife is inadmissible.

2. In such a case, it is error for the trial court to exclude testimony offered by the plaintiff to show that while he is not the owner of the land on which the house so damaged stands, he is the owner of the house itself, having received a parol license from the owner of the land to place the house on the land; and where it appears that such owner is dead, proof that the licensee continued to pay to his heirs rent for the ground and not for the house will justify an inference by the jury that the license had been renewed or continued by the heirs.

No. 1118.   Submitted November 8, 1901.   Decided January 7, 1902.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia entered upon a verdict directed by the court in an action of trespass.
                                              *Reversed.*

The COURT in its opinion stated the case as follows:

This cause has heretofore been before this court on a question of practice (13 App. D. C. 269). It has also on the same question passed through the Supreme Court of the United States (176 U. S. 532). Now it comes up again after a trial upon the merits in the Supreme Court of the District, wherein verdict and judgment were rendered against the appellant, who was plaintiff in the cause, upon direction of the court.

The suit is one at common law in trespass, whether trespass *quare clausum fregit* or trespass on the case the appellant does not make clear, and it is perhaps unnecessary to determine. It is a suit to recover compensation for injuries sustained by the appellant caused by the blasting of rock near his house by the appellees or under their direction, by which large fragments of rock were thrown against the appellant's house and his house and his wife were injured. The allegations of the declaration are that, on July 15, 1892, and on various days between that time and the first day of October, 1892, the defendants "by such blasting unlawfully and forcibly, with great and dangerous violence, threw large and heavy pieces of said rocky formations from time to time into the premises on said street and near said ground occupied and held by said plaintiff under a yearly ground rent, with other rights and privileges, and against the house and habitation on said premises, which house was and is owned by said plaintiff and was used and occupied during said period by said plaintiff and his family as a dwelling." And the declaration proceeds to specify that on July 21, 1892, a blast occurred, whereby a large piece of rock was thrown upon the plaintiff's premises, which struck the plaintiff's wife and severely injured her; and that, on August 6, 1892, during the continuance of such blasting, a large piece of rock was thrown against the plaintiff's house, whereby the house was greatly injured and the plaintiff put to an expense of about $65 to repair it, as far as it could be repaired. This is the substance of the plaintiff's complaint.

The declaration was filed on August 3, 1895; and the defendants pleaded the general issue and the statute of limitations; and upon the issues thereby raised the parties went to trial.

At the trial the only testimony adduced was on behalf of the plaintiff. The fact of the blasting was proved, and that permission had been given for the work by the District authorities. It was also shown, upon the cross-examination of the plaintiff's witnesses, that the building injured was, according to one witness, worth not more than $25, according to another witness, worth about $150. One witness testified that there was only one blast that did any damage to the plaintiff's house, and that it was the same one in which the injury was claimed to have happened to the plaintiff's wife. As to the time at which this took place, the record says: " This blast, witness thinks, was in July, 1892 — has it in his brain it was July or August." Two other witnesses, daughters of the plaintiff, testified that the injury to their mother occurred on July 21, 1892. Thereupon one of these was asked how long her mother was confined to bed from her injury; but, upon objection by counsel for the defendants, this question was ruled out by the court. Exception was reserved by the plaintiff, and upon this exception the first assignment of error before us is based.

After some further testimony not necessary here to be stated, and as to which it is sufficient to say that part of it showed that the plaintiff was a tenant of the land, which was owned by one Elias Travers and his heirs, at a yearly rental of twelve dollars, the plaintiff offered to prove by his own testimony that the house, which he occupied and which had been injured by the blasting, had been built by himself elsewhere and had been moved by him on the Travers lot under a parol license from the owner, Elias Travers, who had died about fifteen years before the trial. To this objection was made on behalf of the defendants, and the proposed testimony was excluded. Upon exception to this ruling is founded the second assignment of error before us.

In the course of his testimony, with reference to the time

of the occurrence of the injury, the plaintiff stated that " the time said injuries were done was in 1892, he believed in September." He also stated that he was a tenant of the lot of ground occupied by him as a tenant from year to year. One of the daughters of the plaintiff, who, as already stated, had previously testified in the case, and who said that she was about fifteen years of age at the time of the injuries complained of, had given the date at which her mother was injured as July 21, 1892, and the date at which the house was injured as August 6, 1892, which date she took from a memorandum book which she said she kept and which she exhibited in court.

Upon the conclusion of the evidence the defendants moved the court to direct a verdict in their favor, and this was done. The plaintiff excepted, and this exception becomes the ground of his third and last assignment of error. Judgment being thereupon entered for the defendants, the plaintiff has appealed.

*Mr. J. J. Waters* for the appellant:

In regard to the statute of limitations, attention is called to the nature of this suit. It was for damages by a continuing public nuisance as can be seen from the bill of exceptions. Now plaintiff's right to recover damages is shown by *Neitzey* v. *B. & P. RR. Co.,* 5 Mackey, 34, 43; *Harley* v. *Merrill Brick Co.,* 83 Iowa, 73, 74; *Greene* v. *Nunnemacher,* 36 Wis. 50, 55, 57, 58; *B. & P. RR. Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 328–335. No length of time legalizes a public nuisance, especially a continuous one. And the right of appellant to recover in this action, notwithstanding the statute of limitations, is shown by *New Salem* v. *Eagle Mill Co.,* 138 Mass. 8–10; *Reed* v. *State,* 108 N. Y. 407, 410, 414.

*Mr. Wm. F. Mattingly* for the appellees:

Parol evidence of the plaintiff that Travers, the owner of the ground, who had been dead for about fifteen years, from

whom he had rented it, had given him a parol license to put the house on the lot, was not admissible. It was an offer to prove by parol that the plaintiff was owner of a house on another's man's lot. If one builds a house on another person's land it becomes part of the realty and belongs to the owner of the land; and under the statute of frauds an interest in land cannot be created by parol. The plaintiff sues as owner of the house for a trespass on it. The landlord may bring case for injury to his freehold; tenant cannot bring trespass. 1 Ch. Pl. 63. Suppose Travers' heirs had sued for injuries to the freehold, would defendants have been permitted to prove by parol that the house on this lot did not belong to them but belonged to Jackson? Clearly not. It is not a question of whether a court of equity would have, under such parol proof as was offered, permitted Jackson to remove the house; but the question is, Whether in a court of law Jackson would be permitted to show by parol that, admitting that he was not the owner of the land, but a tenant, he was the absolute owner of the house so as to maintain trespass for an injury done to it. The rules which the law has laid down for the creation and transmission of interests in and titles to land cannot be evaded by making the execution of a parol license operate as a substitute for a written or sealed instrument. 2 Am. Lead. Cas. (4th ed.), pp. 757 *et seq.; Railroad Co.* v. *Algire,* 63 Md. 319. See also *Hayes* v. *Richardson,* 1 G. & J. 66, and *Carter* v. *Harlan,* 6 Md. 20; *Stevens* v. *Stevens,* 11 Metc. 251; *Hodgkins* v. *Farrington,* 5 L. R. A. 209 (Mass.); *Van Ness* v. *Packard,* 2 Pet. 137; *Kutter* v. *Smith,* 2 Wall. 491, 499. The alleged license, upon the death of the licensor, Elias Travers, was, *ipso facto,* revoked. *De Haro* v. *United States,* 5 Wall. 599, 627; *Hodgkins* v. *Farrington, supra.*

Mr. Justice MORRIS delivered the opinion of the Court:

1. The first assignment of error is plainly untenable. It matters not whether under the form of action adopted in the cause testimony would otherwise be admissible as to the nature

and extent of the injuries sustained by the plaintiff's wife in consequence of the wrongful act of the appellees on July 21, 1892. The defendants had pleaded the bar of the statute of limitations in defense of the action; and consequently no wrongful act of theirs committed prior to August 3, 1892, could constitute a ground of recovery in this case. The appellant seeks to avoid the bar of the statute by the contention that the action of the defendants in the premises was a continuing nuisance. But plainly there was here no continuing nuisance — no nuisance at all, in fact, in contemplation of law. It is plain that the defendants, under the circumstances, had a right to blast. The plaintiff himself shows that they had a permit for the purpose from the lawful authorities of the District. It was their duty, of course, to do the work carefully and cautiously, and in such manner as to cause no injury to person or property; and upon this record it would seem, on the contrary, that they were not only grossly negligent, but even criminally reckless, and that by their negligence and their recklessness the plaintiff suffered serious injury, for which he should have been compensated by them. But their want of care in the performance of the work does not constitute the work itself a nuisance. Their several acts of trespass against the plaintiff and against his wife and property were sporadic acts, having no necessary connection with each other. Each in itself was an independent trespass and a ground for action on behalf of the plaintiff. Inasmuch, therefore, as the act of the defendants which resulted in injury to the plaintiff's wife occurred on the 21st day of July, 1892, and was begun and completed on that day, and a cause of action immediately accrued therefor, it is very plain that recovery for it in the present suit was barred by the statute of limitations. It is of no consequence, therefore, so far as the present action is concerned, how long the plaintiff's wife was ill, and what the extent was of her injuries. It was incumbent on the plaintiff, if he would recover therefor, to have instituted his suit within three years after the cause of injury had occurred. The exclusion of testimony, therefore, as to the extent of her injuries was right and proper.

2. The second assignment of error raises the question whether, in a case like the present, the plaintiff is entitled to prove his ownership of the house that was injured, as distinguished from the land on which it stood and which is conceded to be in some other person or persons, the heirs of one Elias Travers, by showing a parol license from Elias Travers to the plaintiff to move the house, which then stood somewhere else, upon the land of Travers, then the owner of the land.

The general law of license to go upon land is stated by Mr. Justice Davis, speaking for the Supreme Court of the United States, in the case of *De Haro* v. *United States,* 5 Wall. 599, 627, where he said:

" There is a clear distinction between the effect of a license to enter lands, uncoupled with an interest, and a grant. A grant passes some estate of greater or less degree, must be in writing, and is irrevocable, unless it contains words of revocation; whereas a license is a personal privilege, can be conferred by parol or in writing, conveys no estate or interest, and is revocable at the pleasure of the party making it. There are also other incidents attaching to a license. It is an authority to do a lawful act, which without it would be unlawful; and while it remains unrevoked is a justification for the acts which it authorizes to be done. It ceases with the death of either party, and cannot be transferred or alienated by the licensee, because it is a personal matter, and is limited to the original parties to it. A sale of the lands by the owner instantly works its revocation, and in no sense is it property descendible to heirs. These are familiar and well established principles of law, hardly requiring a citation of authorities for their vindication; but if they are needed, they will be found collected in the notes to 2d Hare and Wallace's American Leading Cases, commencing on page 376."

The license claimed by the plaintiff in the present case and offered by him to be proved was " a parol license from Mr. Travers to put the house on the lot as his (plaintiff's) house." This is somewhat indefinite, as stated; and if the plaintiff would recover in this case, he should make the offer more specific. But we may assume that it was intended to mean

that the plaintiff had a parol license from Travers to put the house upon the lot, to retain the ownership of the house, to have the right to occupy it as such, and to have the right to remove it at any time thereafter during the period of the existence of the license or within a reasonable time after its revocation. Now, under the authority of the case of *De Haro* v. *United States,* this license was determined and came to an end by the death of Travers, its grantor; or rather it was determinable by that occurrence, and the heirs of Travers did not continue to be bound by it. But it does not follow that the heirs of Travers might not elect to continue the license or to recognize its continued existence. The rule of law does not compel them to regard it as being no longer in force; and they might well prefer to let it continue to be operative. This, they seem, in fact, to have done. He seems to have continued to pay the heirs, or their agents, rent for the ground, and not for the house, precisely as he had done to the original grantor of the license. No change whatever seems to have occurred in the situation; and it would have been a fair inference for the jury to draw that the license had been continued or renewed by the heirs. The character of the building, as evidenced by the testimony relative to its value, was such as to confirm this inference, inasmuch as, when it became desirable to improve the property, the removal of the building would have been desirable. While, therefore, the testimony on the point, both that adduced and that sought to be adduced, was exceedingly meager, we can not say that there was no testimony for the jury proper to be considered as showing the continued existence or recognition of the license claimed by the plaintiff.

This conclusion antagonizes no right of the heirs of Elias Travers. If, in fact, the license granted by Elias Travers to the plaintiff has come to an end, and the relation between the plaintiff and the heirs of Travers is that of tenant and landlord, not only in respect of the land, but equally in respect of the house, it being assumed that the latter has become part of the freehold, yet the heirs of Travers have not asserted any right in the house as against the trespasses com-

17

mitted by the defendants, and, in view of the bar of the stat-
ute of limitations, it is now too late for them to do so. This,
also, is a circumstance which the jury might well consider as
tending to show the continuation of the license by the heirs.

Now, if the plaintiff could have shown by competent testi-
mony that the house which he inhabited he had owned before
it was put upon the lot on which it stood, that he put it on
the lot by a parol license from Elias Travers which author-
ized him to continue in the ownership of it and to remove it,
if he so desired, at any proper time thereafter, and that this
license had been recognized and continued in force by the
heirs of Elias Travers, it is not apparent why he should not
have been allowed to recover damage for the injury sustained
by the house through the unlawful act of the defendants to
the extent of the amount of the injury, which seems to have
been, according to the testimony, the sum of $64.21. Owner-
ship of a house, independently of the land upon which the
house is placed, is nothing unusual or unprecedented in
the law. On the contrary, it is of frequent occurrence in the
matter of constructions for the purpose of trade, as well as
for other purposes. And if such ownership can exist, and
can be created by parol, as all the authorities hold it can be,
we see no reason why the plaintiff may not show that he held
such ownership by parol in the house occupied by him. This
is not the creation of an estate in the land by parol, which,
under our laws respecting the conveyance of land, and under
the provisions of the statute of frauds, may not be done;
but it is merely a permission to the licensee to come upon the
land with his movable property and an agreement that the
property shall remain movable and shall not become a part
of the freehold.

We think, therefore, that there was error in the refusal
of the trial court to permit the plaintiff to show the parol
license under which he claimed, although this error was in
great measure superinduced by the plaintiff himself through
the indefiniteness of his offer and the peculiar character of
his pleadings.

3. The third assignment of error is based upon the instruc-
tion given by the trial court at the conclusion of the plaintiff's

testimony to the effect "'that in law, under the pleadings, in-cluding the statute of limitations, plaintiff's evidence did not entitle him to recover."

In view of what we have said in reference to the second as-signment of error and inasmuch as a new trial will have to be awarded for the error specified therein, it is unnecessary to consider this third assignment further than to say that, in any new trial of this cause, all damage alleged to have been sustained by the plaintiff prior to August 3, 1892, must be eliminated from the case as finally barred by the statute of limitations.   Only one act of trespass is alleged to have been done after that day, namely, that of August 6, 1892. Whether this was the act by which the house was damaged, does not very satisfactorily appear.   But if it was, the plaintiff is not barred by the statute of limitations from recovering for it to the extent of the injury which he shows himself to have suf-fered, and to no greater extent.

From what we have said we must *reverse the judgment in this cause; but such reversal will be without costs, of which each party will pay his own, and the cause will be remanded to the Supreme Court of the District of Columbia, with direc-tions to award a new trial therein.   And it is so ordered.*